JOURNAL ENTRY and OPINION
{¶ 1} Jesse Coleman appeals from a judgment of the common pleas court finding him guilty of felonious assault following a bench trial in connection with an incident in which he shot Terry Magwood, who refused to leave his home. On appeal, Coleman contends that his conviction is against the manifest weight of the evidence; that the court failed to consider the lesser offenses of aggravated assault and negligent assault; and that he received ineffective assistance of counsel. After a careful review of the record and applicable law, we reverse this conviction because it is against the manifest weight of the evidence and also because the court should have considered the lesser offense of aggravated assault. Accordingly, this matter is remanded for further proceedings consistent with this opinion.
 {¶ 2} The record reflects that Coleman, a 65-year-old retired police officer, lived at a house at 15109 Harvard Avenue and served as caretaker for his ailing mother. He lived in the basement of the home and his mother slept in a bed in the living room on the first floor. On the evening of May 6, 2001, several family members, including Coleman's niece, Kelly Gilmett, gathered in the house to celebrate his mother's 82nd birthday. Around 11:00 p.m., Gilmett's fiance, Terry Magwood, arrived at the house highly intoxicated. A blood test later showed cocaine in his system and a 0.305 alcohol level. Gilmett complained to Magwood about his intoxication, and, at one point, Coleman told Magwood, "Maybe you should just leave." Gilmett and Magwood then left for a walk, and Coleman went to bed. When Magwood became argumentative and began using profanity, Gilmett parted ways with him and headed toward her mother's house down the street. About half an hour later, she returned to Coleman's house; to her surprise, Magwood came out from behind Coleman's house, and the two went inside. Magwood used a phone in the house to call a female; this led to an argument between Magwood and Gilmett, which awakened Coleman, and caused him to grab a gun which he kept next to his bed. Gilmett heard what she thought was a knock on the door next to the staircase leading to the basement. When she went to the door, she saw her uncle standing at the bottom of the staircase holding a shotgun. Coleman told Magwood to leave the house; Gilmett also pleaded with him to leave with her. Magwood refused, and Gilmett left the house by herself. According to Coleman's trial testimony, Magwood cursed at him, saying he was going to "kick his old ass." Magwood turned to leave, but abruptly spun around and pointed his left finger at Coleman. When Coleman could not see Magwood's right hand placed behind his back, he thought Magwood had a weapon and he fired his shotgun. Magwood then ran from the house and Coleman himself called the police. When the police arrived, Coleman showed the officer the gun he had fired and told him he felt threatened in his own house by Magwood. Magwood suffered buckshot wounds and lost the muscles in his left arm.
 {¶ 3} The grand jury indicted Coleman for one count of felonious assault, with both a one and three-year firearm specification.
 {¶ 4} Coleman waived a jury. At trial, Magwood gave his account of the shooting, describing only that as he and Gilmett were exiting the door, he heard some mumbling from the bottom of the stairs, and, as he reached for the door handle, he saw a flash. He looked down and saw that he had been hit in the arm. On cross examination, he admitted he had consumed three mixed drinks and four beers in the afternoon and also inadvertently smoked a cigarette containing cocaine.
 {¶ 5} Kelly Gilmett testified that Magwood turned belligerent on his walk with her and that she became fearful because she knew he could be violent when intoxicated. She told Magwood she would see him at another time and left to go to her mother's house. She further testified that upon returning to Coleman's house, after she saw him at the bottom of the staircase with the shotgun, she urged Magwood to leave but he refused to do so. After she left, she heard a gunshot from the house.
 {¶ 6} Officer Craska, the police officer who responded to the incident, testified that when he arrived at Coleman's house, Coleman showed him the gun and told him that he felt threatened by Magwood.
 {¶ 7} Coleman testified in his defense, stating that he was awakened by screaming and cursing and recognized his niece's voice. He then grabbed his shotgun next to his bed, thinking someone had entered his house. He saw Magwood standing at the top of the staircase, shouting, "The son of a bitch has a shotgun." He asked Magwood to leave and told him he was going to call the police. Magwood stood there cursing him, saying he would "kick his old ass", then started to leave but then turned around abruptly. He testified Magwood then pointed his left finger at him and he could not see his right hand behind his back. He thought Magwood had a weapon and, in fear for his life, he jerked the shotgun up and fired it.
 {¶ 8} The court found him guilty of felonious assault and of both the one-year and three-year firearm specifications and it sentenced him to a two-year term for the felonious assault consecutive with a three-year term for the firearm specification.
 {¶ 9} Coleman now appeals, raising three assignments of error for our review. We review his second of assignment first, which states:
 {¶ 10} "THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO CONSIDER THE LESSER OFFENSES OF AGGRAVATED ASSAULT AND NEGLIGENT ASSAULT AS POTENTIAL ALTERNATIVE CONVICTIONS PURSUANT TO CRIM.R. 31(C)."
 {¶ 11} Coleman contends the court erred in failing to consider the lesser offenses of aggravated assault and negligent assault. The state counters that the record does not indicate this failure by the court. The issue for our resolution then concerns whether the court erred by failing to consider these lesser offenses.
 {¶ 12} R.C. 2903.11(A) defines the offense of felonious assault as follows:
 {¶ 13} "No person shall knowingly:
 {¶ 14} "(1) Cause serious physical harm to another * * *;
 {¶ 15} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance * * *."
 {¶ 16} R.C. 2903.12 defines the offense of aggravated assault:
 {¶ 17} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly: "(1) Cause serious physical harm to another * * *."
 {¶ 18} We begin our analysis by noting that aggravated assault is not a lesser included offense of felonious assault; it is, however, an inferior degree of felonious assault with a reduction in penalty upon the determination by the trier of fact of the existence of the mitigating circumstance of serious provocation. See State v. Carter (1985),23 Ohio App.3d 27, 32; State v. Anderson (July 19, 2001), Cuyahoga App. No. 78451; State v. Wilson (Sept. 21, 2000), Cuyahoga App. No. 77115.
 {¶ 19} Furthermore, provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. State v. Deem (1988), 40 Ohio St.3d 205, paragraph five of the syllabus. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. Id.
 {¶ 20} Here, the record contains Gilmett's testimony that Magwood refused to leave Coleman's house after Coleman asked him to do so and that Magwood said, "If you're going to shoot me, just shoot me." It also reflects Coleman's testimony that Magwood responded to his request to leave by cursing him and saying he was going to "kick his old ass," and by pointing his left finger at him while hiding his right hand behind his back.
 {¶ 21} Thus, the record contains some evidence of serious provocation which would have warranted a jury instruction on the lesser offense of aggravated assault. Since this case was tried to the bench, the issue becomes whether the court should have considered the lesser offense of aggravated assault where the defendant is charged with felonious assault and evidence of serious provocation has been presented at trial.
 {¶ 22} Cases from our court have reviewed a similar issue. InState v. Arnold (October 2, 1997), Cuyahoga App. No. 71262, the defendant appealed his conviction of felonious assault after a bench trial and likewise urged that the court should have considered the lesser offense of aggravated assault even though the defendant was indicted with felonious assault. There, we affirmed the conviction, reasoning that "there is no evidence suggesting the trial court, as factfinder, did not consider the alleged provocation and decided it was insufficient to reduce the crime from felonious assault to aggravated assault." See, also, State v. Salwan (May 30, 1996), Cuyahoga App. No. 68713; State v.Leibold (March 11, 1993), Cuyahoga App. No. 62071. The premise underlying this case law is that if evidence of serious provocation exists, the court should consider the lesser offense of aggravated assault.
 {¶ 23} The record in the instant case reflects that in finding Coleman guilty of felonious assault, the court stated that "[i]t is indisputable that the defendant knowingly caused serious physical harm to the victim, and that he did so by means of a deadly weapon, his gun." Then, after stating that Coleman failed to prove self-defense by a preponderance of the evidence, the court found him guilty of felonious assault. On the basis of this record, we conclude that the court failed to consider the lesser offense of aggravated assault despite the existence of evidence of serious provocation.
 {¶ 24} Although counsel did not bring this error to the court's attention, we take notice of the plain error under Crim.R. 52 as it affects Coleman's substantial rights and conclude that the court erred by not considering the lesser offense of aggravated assault.
 {¶ 25} Regarding his claim that the court should have also considered the lesser offense of negligent assault, an offense which occurs when a person "negligently, by means of a deadly weapon or dangerous ordnance * * * cause [sic] physical harm to another," R.C.2903.14, we are guided by the court's analysis in State v. Parra (1980),61 Ohio St.2d 236. There, the court considered a claim by a defendant charged with attempted murder who argued that the court erred in failing to instruct the jury on the lesser offense of negligent assault. It held that because the claim of self-defense is inconsistent with an unintentional shooting, an instruction on negligent assault where the defendant claims self-defense would be unwarranted.
 {¶ 26} As in Parra, Coleman presented a defense of self-defense. In accordance with Parra, therefore, the court here need not have considered the lesser offense of negligent assault. This assignment of error is sustained in part.
 {¶ 27} Coleman's first assignment of error states:
 {¶ 28} "MR. COLEMAN'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 29} Coleman asserts that his conviction is against the manifest weight of the evidence urging that the court's finding that he did not act in self-defense is not supported by the record.
 {¶ 30} We first note that the defendant correctly raises a manifest-weight challenge, rather than a sufficiency challenge; when reviewing a claim by a defendant that evidence he has presented supports the affirmative defense of self-defense, the manifest-weight standard is the proper standard of review. This is because a defendant claiming self-defense does not seek to negate an element of the offense charge but rather seeks to relieve himself from culpability. See State v. Martin
(1986), 21 Ohio St.3d 91. Because a sufficiency challenge is premised on the quantum of evidence adduced by the state, a defendant's assertion on appeal that he has proven self-defense cannot be a sufficiency claim. Rather, it must be reviewed under the standard for a manifest-weight claim. See State v. Roberts (2000), 139 Ohio App.3d 757. See, also, Statev. Evans, Cuyahoga App. No. 79895, 2002-Ohio-2610; State v. Thomas (Aug 25, 1994), Cuyahoga App. No. 65300; State v. Gardner (March 30, 1989), Cuyahoga App. No. 55171.
 {¶ 31} The standard of review for a manifest-weight challenge is summarized in State v. Martin (1983), 20 Ohio App.3d 172, as follows:
 {¶ 32} "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.)
 {¶ 33} The elements of self-defense as set forth by the court inState v. Robbins (1979), 58 Ohio St.2d 74, in its syllabus, are as follows:
 {¶ 34} "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger."
 {¶ 35} Here, the record reflects that Magwood, highly intoxicated, had an argument in Coleman's house with Gilmett around midnight. At that time, Coleman, who had been sleeping in his bedroom in the basement, was awakened by the argument; he grabbed his shotgun, and stood at the bottom of the basement steps. Gilmett testified that after she saw her uncle standing on the bottom of the stairs holding a gun, she pleaded with Magwood to leave but he refused. Coleman testified that Magwood refused to leave his house and threatened to "kick his old ass" and also menacingly pointed a finger at him with one hand behind his back. According to Magwood, however, only Coleman's mumbling from the bottom of the stairs preceded the shooting.
 {¶ 36} Given this record, and after weighing the evidence and all reasonable inferences and considering the credibility of witnesses, we conclude that Coleman was not at fault in creating the situation giving rise to the affray; that he had a bona fide belief that he was in imminent danger of great bodily harm from Magwood who had threatened to "kick his old ass" and that his only means of escape from such danger was to use his shotgun; and, finally, that he did not violate any duty to retreat because he stood in his own bedroom in the basement of his own house.
 {¶ 37} Thus, we conclude that in resolving conflicts in the evidence, the court lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 38} Our resolution of the first and second assignments of error renders the third assignment of error moot. App.R. 12(A)(1)(c). On the basis of the foregoing, we reverse Coleman's conviction for felonious assault and remand the case for further proceedings consistent with this opinion.
Judgment reversed. Case remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and ANN DYKE, J., CONCUR.